UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAWINDER KANDOLA (A# 208-177-888),

                Petitioner,

     v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

                Respondent.

No.  1:26-cv-02714 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding with a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I.    Factual and Procedural Background

Immigration officials apprehended petitioner, a citizen and national of India, shortly after he entered the United States without inspection on May 24, 2015.  ECF No. 8-1 at 2.  Officials processed petitioner under 8 U.S.C. § 1225(b)(1) and released him after a brief detention.  Id.; ECF No. 1 at 5-6.  Since his release, petitioner has "built a life in the United States," was issued a work authorization and was working at a gas station.  ECF No. 1 at 6.  On May 24, 2022, an immigration judge ("IJ") granted a joint motion to dismiss petitioner's removal proceedings.  ECF No. 8-1 at 2.  ICE agents re-detained petitioner on February 16, 2026, as he exited Butte

1

County Jail after serving a 208-day sentence for assault with a deadly weapon under California Penal Code § 245(a)(1) and vandalism under California Penal Code § 594(B)(1).  ECF No. 8-1 at 3.  Petitioner is currently detained in the California Detention Facility, within this judicial district.  ECF No. 1 at 3.

Petitioner filed in the instant § 2241 petition on April 10, 2026, asserting that his ongoing detention without a hearing on danger or flight risk violates the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 16-17.  He seeks immediate release or, in the alternative, a bond hearing before an IJ where the government bears the burden of proving his detention is justified by clear and convincing evidence of flight risk or danger.  Id. at 17.  Respondent opposes the petition and asserts petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and does not possess any due process rights outside of that statute.  ECF No. 8 at 2.

## II.     Legal Standard

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

## III.     Discussion

Respondent's stance that petitioner is an applicant for admission under 8 U.S.C. § 1225(b)(2) reflects the minority view of cases that the undersigned has repeatedly rejected.[1]  The

---

[1]  The undersigned declines to follow Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128 (8th Cir. Mar. 25, 2026), for the reasons articulated in

undersigned will still consider whether petitioner remains subject to mandatory detention under § 1225(b)(1), as was the case during his initial detention, see ECF No. 8-1 at 2-3, or whether he is now detained under the discretionary detention procedures at 8 U.S.C. § 1226(a). "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

The basis for petitioner's initial release would be instructive, but is not clear on this record. Petitioner claims an immigration judge granted his release on $15,000 bond, ECF No. 1 at 6, which would likely mean he was released pursuant to 8 U.S.C. § 1226(a) and its implementing regulation at 8 C.F.R. § 1236.1(d). By extension, that would make § 1226(a) the basis for petitioner's current detention, as "the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)." Gutierrez v. Chesnut, No. 1:25-cv-1515 DAD AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (collecting cases).

However, even if petitioner was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A)—the statutory mechanism for release of noncitizens like petitioner processed under 8 U.S.C. § 1225(b)(1), see Jennings v. Rodriguez, 583 U.S. 281, 288 (2018)—the termination of his removal proceedings in 2022 "demonstrates that [he] has not been 'seeking admission' in the time since." See Del Valle Castillo v. Wamsley, No. 2:25-cv-2054 TMC, 2025 WL 3524932, at *7 (W.D. Wash. Nov. 26, 2025) (finding that the termination of petitioner's removal proceedings made her subject to § 1226(a) "regardless of the basis for her initial detention") (citing 8 C.F.R. § 1239.2(e)). Thus, despite the ambiguity as to the statutory basis for petitioner's initial release, given the dismissal of his removal proceedings in 2022, the

De La Paz Salazar, et al. v. Noem, No. 1:26-cv-0899 DC SCR, 2026 WL 915128, at *4 (E.D. Cal. Apr. 3, 2026). The undersigned instead finds persuasive the Second Circuit's extensive analysis in Cunha v. Freden, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). See also Castañon-Nava v. U.S. Dep't of Homeland Security, 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that DHS is "not likely to succeed on the merits of their argument that those individuals, whom ICE arrested without a warrant [in the interior of the United States], are subject to mandatory detention under § 1225(b)(2)(A)").

3

undersigned finds that petitioner is not an applicant for admission under § 1225(b)(1).  Instead, he is detained under § 1226(a) and entitled to that statute's procedural protections, including the right to seek an initial custody re-determination before an IJ.  See 8 C.F.R §§ 1236.1(d), 1003.19(e).  On this basis alone, the undersigned concludes that petitioner's continued re-detention without bond violates due process.  See Perez v. Albarran, No. 1:25-cv-1540 DAD CSK (HC), 2025 WL 3187578, at *4 (E.D. Cal. Nov. 14, 2025) (finding that re-detention of petitioner under § 1226(a) without notice and opportunity to be heard violated due process); Souza v. Robbins, No. 1:25-cv-1597 DJC JDP, 2025 WL 3263897, at *3 (E.D. Cal. Nov. 23, 2025) (same).

The undersigned notes that even if petitioner was detained under 8 U.S.C. § 1225(b)(2) as respondent claims, "[he] has a liberty interest in his continued release regardless of the applicable detention scheme."[2]  Cajina v. Wofford, No. 1:25-cv-1566 DAD AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (citations omitted); see also Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606, *3 (E.D. Cal. Dec. 9, 2025) (finding petitioner had protected liberty interest in continued release on humanitarian parole under 8 U.S.C. § 1182 and collecting cases).  Petitioner's 2025 conviction and re-detention immediately upon release from jail does not diminish this liberty interest.  After his initial release sometime in 2015, petitioner developed significant "enduring attachments to normal life," Morrissey, 408 U.S. at 482, including securing a work authorization and employment at a gas station.  ECF No. 1 at 5-6.  "That Petitioner's detention by ICE occurred immediately upon his release from criminal detention . . . amplifies the significance of his liberty interest."  Anzor I. v. Ice Field Off. Dir., No. 2:26-cv-0383 TLN CSK,

---

[2]  Respondent's argument that petitioner lacks any due process right to freedom outside of § 1225(b)(2) is unconvincing.  Respondent relies on Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), which is materially distinguishable from this case.  Its "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."  Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023); see also Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original).  Moreover, Thuraissigiam concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, and who DHS had never released into the United States, not an individual like petitioner who has established meaningful ties to the United States.

4

2026 WL 787978, at *3 (E.D. Cal. Mar. 20, 2026) (finding petitioner retained liberty interest in continued release on parole despite subsequent arrest and incarceration in Placer County Jail).

Accordingly, because petitioner has a liberty interest in his continued release, the undersigned finds that his re-detention without notice and an opportunity to be heard violated due process. Respondent argues that if the Court finds a due process violation, the remedy should be a post-deprivation hearing because of petitioner's "criminal history." ECF No. 8 at 3. But generic objections based on petitioner's criminal history are insufficient to warrant a post-deprivation hearing instead of immediate release.[3] Courts have found post-deprivation remedies appropriate in cases with particularized flight risks that "urgently require arrest" and where a pre-deprivation hearing "would have been impracticable and/or would have motivated [petitioner's] flight." O.A.C.S. v. Wofford, No. 1:25-cv-1652 DAD CSK (HC), 2025 WL 3485221, at *4 (E.D. Cal. Dec. 4, 2025) (quoting Martinez Hernandez v. Andrews, No. 1:25-cv-1035 JLT HBK, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025)). Respondent has identified no such urgency that would make a pre-deprivation hearing impracticable here. Immediate release is the appropriate remedy.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's (A# 208-177-888) application for a writ of habeas corpus (ECF No. 1) be GRANTED as follows:

    a. Respondent be ORDERED to immediately release petitioner from respondent's custody.

    b. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner

---

[3] Moreover, in United States v. Gomez, 165 F.4th 1199, 1209-10 (9th Cir. 2026) (en banc), the Ninth Circuit concluded that "a conviction under California Penal Code § 245(a)(1) does not qualify as a crime of violence." As a result, here, petitioner's § 245(a)(1) conviction is not an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) that would require mandatory detention under 8 U.S.C. § 1226(c)(1)(B). See Vasquez-Calix v. Blanche, No. 24-1364, 2026 WL 1165178, at *1 (9th Cir. Apr. 29, 2026) (granting habeas petition and vacating removal order where petitioner's removability was based solely on his § 245(a)(1) conviction that was no longer an "aggravated felony" after Gomez).

5

for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge where respondents will have the burden to demonstrate by clear and convincing evidence that petitioner is a danger to the community or a flight risk.

    c. Any order adopting these findings and recommendations include language that it does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2. Petitioner's motion to appoint counsel (ECF No. 3) be DENIED as moot.

3. The Clerk of the Court be directed to:

    a. Serve California City Detention Facility with a copy of this Order; and

    b. Enter judgment in petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

6